# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CASEY GENE SMITH, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-15-104-RAW-SPS |

## REPORT AND RECOMMENDATION

The claimant Casey Gene Smith requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  *See also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born December 3, 1978, and was thirty-four years old at the time of the most recent administrative hearing (Tr. 115, 628).  He completed two years of college, and has worked as a gambling dealer, lumber yard salesclerk, light truck driver, welder, and radio operator (Tr. 155, 618).  The claimant alleges that he has been unable to work since February 14, 2009, due to post-traumatic stress disorder (PTSD) and back problems (Tr. 150).

**Procedural History**

On February 26, 2009, the claimant protectively applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434.  His application was denied.  ALJ Osly F. Deramus conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 19, 2010 (Tr. 15-31).  The Appeals Council denied review, but this Court reversed on appeal in Case No. CIV-12-185-FHS-SPS based on an agreed motion by the parties, and remanded the case with instructions to disregard an opinion in the record that had been rendered by an individual whose medical license was not active (Tr. 710-712).  ALJ J. Frederick Gatzke then conducted a second administrative hearing and again determined that the claimant was not disabled in a written opinion dated November 21, 2014 (Tr. 600-619).  The Appeals Council again denied review, so ALJ Gatzke's written opinion became the Commissioner's final decision for purposes of this appeal.  *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a limited range of light work, *see* 20 C.F.R. § 404.1567(b), *i. e.*, he could lift/carry twenty pounds occasionally and ten pounds frequently; stand/walk/sit for six hours during an eight-hour workday; except that he was limited to occasionally stooping, crouching, and kneeling; and that he was permitted an intermittent opportunity to alternate sitting and standing, with the ability to sit every half hour. Additionally, the ALJ found that the claimant could perform jobs that did not require a strict production quota, that he could have only incidental contact with the public and no collaboration with co-workers, that he could perform detailed but not complex work instructions, and that he was not required to resolve disputes on behalf of the employer (Tr. 608). The ALJ concluded that, although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the regional and national economies, *e. g.*, conveyor line bakery worker, inspector packer, and small product assembler (Tr. 618-619).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly assess uncontroverted or significantly probative evidence that conflicted with his findings, which further affected his evaluation of a treating physician opinion and the claimant's own credibility, and (ii) failing to properly account for the claimant's 100% disability rating from the Veteran's Administration (VA). The undersigned Magistrate Judge finds

the ALJ *did* make a number of errors at step four, and the decision of the Commissioner should therefore be reversed.

ALJ Gatzke determined that the claimant had the severe impairments of degenerative disc disease of the lumbar spine with spondylosis, gastritis, obesity, PTSD, mood disorder, and alcohol abuse (Tr. 602). The relevant medical evidence relevant to this appeal reveals that the claimant largely received treatment at various VA Medical Centers, and records from the VA indicate that the claimant had a 100% service-connected disability related to his PTSD, asthma, spondylolisthesis, and paralysis of sciatic nerve (Tr. 518). The claimant received his PTSD diagnosis in 2007 or 2008, and a 2008 assessment diagnosed him with PTSD and mood disorder, with the mood disorder secondary to PTSD (Tr. 202, 227). His PTSD was noted to be characterized by anxiety, hypervigilance, and sleep-deprivation related symptoms (Tr. 227). He was prescribed medications for the PTSD, but was often non-compliant and reported good response when he took them (Tr. 487).

On June 17, 2010, Dr. Stephen Bender conducted a mental RFC assessment of the claimant following a request by the claimant. He had been treating the claimant since September 2009 (Tr. 518, 527-558). Dr. Bender stated in the mental RFC assessment that the claimant was:

> diagnosed with PTSD due to significant combat experience in Iraq. He experiences persistent intrusive thoughts regarding the experiences. In addition, he experiences social avoidance, diminished social interest, and [illegible] feelings of guilt. He also experiences symptoms of hypervigilance, anger/irritability, difficulty concentrating, & sleep difficulty. These have resulted in significant occupational and social impairments.

(Tr. 596). As for the RFC assessment, Dr. Bender indicated that the claimant was *markedly* limited in his ability to: maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them, complete a normal work-day and work-week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting. Furthermore, Dr. Bender indicated that the claimant was *moderately* limited in the ability to: remember locations and work-like procedures, understand and remember very short and simple instructions, understand and remember detailed instructions, carry out very short and simple instructions, carry out detailed instructions, sustain an ordinary routing without special supervision, make simple work-related decisions, ask simple questions or request assistance, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, and set realistic goals or make plans independently of others (Tr. 596).

The record contains two 2009 assessments from state reviewing physicians (Tr. 433-450, 489), but those opinions as the claimant's mental impairments have been disregarded because they were provided based on a now-discredited consultative opinion

(Tr. 616). At the second administrative hearing, Dr. John Simonds testified that he had reviewed all but the most recent (2014) records from the VA (Tr. 658). He stated that he is not in private practice, but that he consults with agencies like the Social Security Administration, mental health hospitals, and clinics (Tr. 665-666). He described the records related to the claimant's physical impairments, then turned to the claimant's mental impairments, noting the diagnoses of PTSD and mood disorder, as well as alcohol abuse dating at least back to 2007 (Tr. 660). He opined that the claimant's mental impairments did not meet a listing, then noted that the claimant's drinking was problematic in combination with his mood disorder and PTSD (Tr. 662). He then further opined that, based on his education, the claimant should be capable of detailed work, but that he should not be dealing with the public or co-workers due to his mood disorder, anger, and PTSD (Tr. 662). Based on questioning from the claimant's representative, Dr. Simonds clarified that the claimant's alcohol abuse and mental impairments were a "dual diagnosis problem, means both diagnoses are important" (Tr. 665). When specifically asked about the use of alcohol and marijuana for people with PTSD as a form of self-medication, Dr. Simonds stated, "They use that as an excuse, yes, but it's not appropriate." (Tr. 666). As to Dr. Bender's opinion he discounted it because "those are general statements made. They don't necessarily apply to specific job limitations. If you modify the job situation to a lower level of stress, very low level of stress, that – those same limitations would not apply" (Tr. 668). When asked about the waxing and waning nature of mental impairments, Dr. Simonds stated, "Yes, every mental disorder will have symptoms like that. You don't get away from that." (Tr. 669).

In his written opinion, the ALJ summarized the claimant's hearing testimonies and the evidence in the record, at both step two and step four. At step four, the ALJ provided lengthy summaries of both Dr. Simond's testimony and Dr. Bender's mental RFC assessment (Tr. 610, 614). The ALJ stated, "There is no evidence demonstrating that claimant would continue to have disabling depression or anxiety if he adhered to treatment, including taking his medication as prescribed ad staying away from alcohol, a known central nervous system depressant" (Tr. 611). As to Dr. Bender's opinion, the ALJ assigned it "diminished weight" by concluding without support in the record that the assessment was a courtesy to the claimant rather than "a genuine medical assessment of discrete functional limitations based upon clinically established pathologies" (Tr. 614). He then noted the appropriate analysis for a treating physician and reasoned that Dr. Bender's opinion was entitled to diminished weight because: (i) Dr. Bender did not begin treating the claimant until September 2009, when the claimant was "distraught" over the break-up with a girlfriend; (ii) he "provided only 45-minute to one-hour counseling sessions"; (iii) despite seeing the claimant once a week for a small period of time, the claimant was not considered for inpatient treatment; (iv) the time between sessions began to increase; (v) although he is a specialist, his treatment records do not support his RFC assessment; (vi) the claimant was not recommended for inpatient treatment of "more extensive treatment" (this reason was given twice); (vii) the claimant had good results with medication when he was compliant; and (viii) because the claimant expressed gratitude for filling out the mental RFC assessment (Tr. 614-615). The ALJ then gave great weight to Dr. Simond's opinion as "fully supported by and consistent

with the medical evidence of record as a whole" (Tr. 615). The ALJ then asserts (incorrectly) that the claimant argued he should be found disabled because he has a 100% service-connected disability rating with the VA, but that such a determination is not binding on him as the ALJ. Instead, the ALJ found it suspect that the claimant stopped working in 2009 because the VA found him disabled, and found that action reflected negatively on his credibility (Tr. 612).

Here, the ALJ wholly failed to properly assess the opinion evidence regarding the claimant's capabilities and mental limitations. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) [quotation marks omitted], *citing*

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ was not required to give controlling weight to any opinion by Dr. Bender to the effect that the claimant was disabled or could not work, but he was required to evaluate for controlling weight any opinion by Dr. Bender as to the claimant's functional limitations and he was not permitted to find it a courtesy as a way to discredit it. Rather than appropriately assess this evidence, the ALJ took great pains to discredit it (and the VA disability rating) in order to find the claimant not disabled, citing only evidence contrary to Dr. Bender's findings and ignoring evidence that supported it. In doing so, he overlooked substantial related evidence in this regard, *e. g.*, continued treatment records that the claimant avoided people he did not know and increasingly stayed at home to avoid being around people, the effect of stress on his mental health, the use of alcohol and drugs as a means of self-medication, continued problems with sleep, and that the claimant had been sent home from work on several occasions in 2008 due to anger control problems (Tr. 200). Thus, the ALJ erred by failing to discuss *all* of the evidence related to the claimant's impairments and citing only evidence favorable to his finding of nondisability. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence

favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

Furthermore, although the ALJ was not required to give controlling weight to the 100% disability rating by the VA, *see, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), he nevertheless *was* required to determine the proper weight to give such a finding by applying the factors in 20 C.F.R. §§ 404.1527, 416.927. Instead, the ALJ simply recited this fact without discussion. *See Miller v. Barnhart,* 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("The [ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner."); Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3 (July 2, 1996) ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."). The undersigned Magistrate Judge agrees that the finding of disability is the province of the ALJ, but the ALJ is not entitled to reject evidence out of hand without determining how that evidence affects the claimant's impairments and how it is otherwise supported by the record. This seems particularly important where, as here,

such a rating may provide additional insight into the effect of the *combination* of *all* the claimant's impairments. *Carter v. Colvin*, 27 F. Supp. 3d 1142, 1146 (D. Colo. 2014) "(When a claimant has one or more severe impairments the Social Security [Act] requires the [ALJ] to consider the combined effects of the impairments in making a disability determination."), *quoting Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987), *citing* 42 U.S.C. § 423(d)(2)(C).

In finding that the claimant was not credible, the ALJ relied in large part on his alleged failure to follow treatment for his impairments, *e. g.*, noncompliance with medications and alcohol abuse. In considering the impact of such failure, the ALJ must follow a four-part test: (i) whether treatment would have restored the claimant's ability to work; (ii) whether treatment was prescribed; (iii) whether treatment was refused; and (iv) whether the excuse was justified. *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987), *citing Weakley v. Heckler*, 795 F.2d 64, 66 (10th Cir. 1986), *quoting Teter v. Hecker*, 775 F.2d 1104, 1107 (10th Cir. 1985). *See also Miranda v. Barnhart*, 205 Fed. Appx. 638, 642 (10th Cir. 2005) ("'[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide.'") [unpublished opinion], *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *7; *Thomas v. Barnhart*, 147 Fed. Appx. 755, 760 (10th Cir. 2005) ("'[T]he medicine or treatment an indigent person cannot afford is no more a cure for his condition than if it had never been discovered . . . To a poor person, a medicine that he cannot afford to buy does not exist.'") [unpublished opinion], *quoting Lovelace v. Bowen,* 813 F.2d 55, 59 (5th

Cir. 1987). In this case, however, the ALJ did not even attempt this analysis in relation to his finding that claimant was noncompliant with medical treatment, nor did he attempt an analysis of the effect of the claimant's drug and alcohol abuse despite the presence of the issue in the record and at the administrative hearing. This is particularly important where, as here, the issues of the side effects of the claimant's medications and his alleged self-medication in the form of alcohol are also intertwined with the ALJ's conclusion that the claimant had refused to follow prescribed treatment.

Because the ALJ failed to properly conduct a step four analysis, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 31st day of August, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**